IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Carol A. Seawright, | ) | C/A No. 3:09-1197-CMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| South Carolina Department of Juvenile Justice, | ) | |
| Bill Byars, in his official and individual capacities, | ) | |
| Margaret Barber and Randall Grant, in their | ) | |
| individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Through this action, Plaintiff, Carol A. Seawright, ("Seawright"), seeks recovery under both

state and federal law theories for her alleged wrongful discharge from employment.[1]  Specifically,

she asserts (1) a claim for damages under 42 U.S.C. § 1983 ("Section 1983") against Bill Byars,

Margaret Barber and Randall Grant (collectively "Individual Defendants"), in their individual

capacities, for wrongful discharge in violation of her rights under the First Amendment to the United

States Constitution; (2) a Section 1983 claim for damages and equitable relief against Bill Byars

("Byars"), in his official capacity, based on the same alleged violation of First Amendment rights;

and (3) a state law claim for damages against the South Carolina Department of Juvenile Justice

("DJJ") for wrongful discharge in violation of public policy.  Dkt. No. 1.  All three causes of action

relate to Seawright's alleged termination from DJJ on or about April 6, 2009.

---

[1]  At the time she initiated this action, Seawright was represented by counsel.  She undertook her own representation beginning in late March 2010, and is presently proceeding *pro se*.  *See* Dkt. No. 16 (*pro se* motion to allow attorney to withdraw); Dkt. No. 18 (counsel's response in support of the client's motion); Dkt. Nos. 17, 19 (related docket text orders).

Defendants maintain that Seawright resigned by stating "I quit" to her supervisors during the course of a meeting and confirmed her intent to resign by failing to appear for work the following day. Seawright maintains that she only mouthed the words "I quit *arguing*," and that she was not at work the following day because of a scheduled furlough day. She further asserts that Defendants mischaracterized her actions as a voluntary resignation in furtherance of their own desire to terminate Seawright's employment in retaliation for her opposition to certain directives, plans or policies of her superiors. For purposes of this order, the court accepts Plaintiff's version of events as true.

For the reasons set forth below and in the Report and Recommendation of the Magistrate Judge, the undersigned concludes that Defendants are all immune from suit save as to the claim asserted against Defendant Byars in his official capacity which claim survives only to the extent it seeks equitable relief in the form of reinstatement. Seawright's claims are, therefore, dismissed to this extent. The court grants Defendants' motion for summary judgment to the extent Seawright's claims relate to her opposition to DJJ's purchase of an autobody paint booth. This ruling is based on Seawright's failure to proffer evidence of a causative link between that opposition and the cessation of her employment. The court declines to adopt the Report to the extent it recommends that Defendant Byars be required to mediate prior to resolution of the remaining aspects of his motion for summary judgment. Finally, the court denies Plaintiff's recently filed motion for summary judgment (Dkt. No. 65) without further briefing.

## BACKGROUND

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2)(e) DSC, this matter was referred to United States Magistrate Judge Paige J. Gossett for pre-trial proceedings and a

Report and Recommendation ("Report"). On September 23, 2010, the Magistrate Judge issued a detailed Report recommending that the court find that: (1) DJJ is entitled to Eleventh Amendment immunity as to the state law claim asserted against it (Dkt. No. 59 at 4-5); (2) the Individual Defendants are entitled to qualified immunity to the extent sued in their individual capacities (first Section 1983 claim) (*id.* at 5-6); and (3) Byars is entitled to Eleventh Amendment immunity to the extent Plaintiff seeks monetary relief under the claim asserted against him in his official capacity (second Section 1983 claim) (*id.* at 5 n.2). The Report further recommends that the court defer ruling on Byars' motion for summary judgment as to the surviving aspects of the Section 1983 claim asserted against him in his official capacity until after the completion of mediation.

The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and Recommendation and the serious consequences if they failed to do so. Seawright timely filed an objection to the Report on October 5, 2010. Dkt No. 62. Defendants also timely filed an objection to some aspects of the Report on October 12, 2010. Dkt. No. 63. On October 14, 2010, Seawright filed a belated "Addition" to her objections. Dkt. No. 64. Despite the lateness of this supplemental briefing, the court considers it as if timely filed, in part because it responds to some arguments made in Defendants' objection. Plaintiff also filed a new but related motion for summary judgment on October 15, 2010. Dkt. No. 65. This motion is also considered here.

## STANDARD

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo*

determination of any portion of the Magistrate Judge's Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). In the absence of an objection, the court reviews the Report and Recommendation only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation") (citation omitted).

## DISCUSSION

### I.    Qualified Immunity

Seawright's objection focuses primarily on the recommendation that her claim against the Individual Defendants in their individual capacities be dismissed on qualified immunity grounds. As Seawright correctly notes, one of the two determinative questions in deciding whether these Defendants are entitled to qualified immunity is whether the relevant right was clearly established at the time of the alleged violation. The answer to this question turns largely on the nature of the speech.

In this case, Seawright alleges that she was terminated for engaging in two distinct categories of speech, one involving opposition to budgeting matters and the other involving opposition to purchase of an autobody paint booth. The qualified immunity analysis is addressed separately below as to each of these categories of speech.

**Alleged Termination for Speech Related to Budgeting Matters.** Seawright argues that her speech in opposition to budgeting and other financial matters constituted protected speech because, despite her duties as DJJ's chief financial officer and the fact that her opposition was

4

entirely within the confines of DJJ, her speech was partially motivated by a personal concern that she not be charged with a crime for following her superior's instructions. Seawright maintains that this personal concern takes this case beyond the limitations applied in *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) ("[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.").[2]

As the Report correctly notes, whether or not a court might find the fear of personal prosecution sufficient to raise what is otherwise unprotected speech as an employee to speech on a matter of public concern, there was no such authority as of the date Seawright's employment ended. It follows that the right was not clearly established at the relevant time.[3]

The court also rejects Seawright's arguments that Byars owed a "special duty to discern and protect free speech" because of his legal education and prior service as a state family court judge. Dkt. No. 62 at 3.[4] In deciding issues of qualified immunity, the court does not focus on subjective

---

[2] *See, e.g.,* Dkt. No. 62 at 4 ("There is no question that Defendants Byars, Barber and Grant knew that Seawright would have to commit fraud to carry forward their financial orders and that she would be personally prosecuted when it was revealed. This action is criminal intent and every citizen knows that s(he) has 1st amendment rights to protect herself and to refrain from carrying out any illegal action. These perpetrators cannot be shielded by immunity.").

[3] To find in Seawright's favor on this issue, the court would need to find that speech motivated by a desire to avoid personal criminal liability is speech as a private citizen on a matter of public concern. This premise is far from clear as a public employee's expression of personal concerns is generally not found to be protected speech. *See generally Connick v. Myers*, 461 U.S. 138, 147-48 (1983) (holding that "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior."). At the least, existing case law does not clearly predict that such speech constitutes protected speech.

[4] Seawright also suggests that Byars ignored (or allowed others to ignore) laws protecting the privacy of juveniles in the custody of DJJ by improperly disposing of confidential records. Dkt. No. 62 at 4-5 (referring to news reports that DJJ failed to destroy juvenile records before consigning

characteristics of the actor. *See generally Willingham v. Crooke*, 412 F.3d 553, 558 (4th Cir. 2005) (noting that, in determining qualified immunity, the court asks whether an "objectively reasonable" state actor would have known the conduct at issue violated the law). Moreover, as noted above, the court does not find the relevant "right" to be clearly established at the time of Seawright's alleged wrongful termination. Thus, even if Byars' legal training and experience were relevant, they would not suffice to defeat his qualified immunity defense as to the claim pursued against him in his individual capacity.[5]

Through her "Addition" to her objection (Dkt. No. 64), Seawright submits documents which she maintains demonstrate that one or more of the Individual Defendants were acting improperly with regard to DJJ's budget or other financial matters. This evidence is irrelevant to Defendants' motion to dismiss because the immunity determinations (both Eleventh Amendment and qualified immunity) are not dependent on the accuracy of Seawright's speech or her motivation. In any event, in resolving Defendants' motion to dismiss, the court has accepted Plaintiff's allegations as true. Similarly, to the extent the court reaches Defendants' motion for summary judgment, the court construes all disputed issues of fact in Plaintiff's favor. Thus, for purposes of this order the court has assumed without deciding that Seawright was not only motivated by a desire to act ethically and legally, but was actually correct in voicing her opposition to the subject fiscal practices.

---

them to the trash). Seawright has not, however, directed the court to allegations or evidence that she engaged in protected speech relevant to these allegations. Thus, there is no reason to assume that these allegations have any relevance to this action.

[5] Seawright appears to concede that the relevant right was not clearly defined by arguing that "[t]here is little precedent to establish this particular line of not only 1st amendment rights correlated to a proposed commission of a crime and civil right violation in retaliation." Dkt. No. 62 at 5. On this basis, she suggests that the court should "clarify the 'ill defined line' in each case" and not leave the determination "in the hands of the perpetrators by implying immunity." *Id.*

Seawright's suggestion that Defendants have now admitted that she was terminated is, likewise, of no relevance to the present order. This is because, for purposes of this motion, the court has assumed without deciding that the evidence would support such a conclusion.[6]

**Alleged Termination for Speech in Opposition to Purchase of Paint Booth.** Seawright argues that she spoke as a private citizen on a matter of public concern when she opposed purchase of an autobody paint booth because her opposition was "as an advocate for children's safety." Dkt. No. 62 at 6. The court has searched Seawright's earlier submissions for more detail as to this alleged speech and finds a handful of brief references to these comments. For example, her complaint contains three generic references to having raised safety concerns with no specific reference to her opposition to the paint booth.[7] Seawright's "motion to dismiss Defendants' motion to dismiss and for summary judgment," likewise, includes generic references to having raised safety concerns.[8] There are, however, some specific references to her opposition to the paint-booth

---

[6] That said, the court does not agree that the statement on which Seawright relies constitutes an admission that Seawright was terminated, rather than that she "quit," much less that she was terminated in retaliation for her speech. The statement on which Seawright relies is found in Defendants' objection to the Report's failure to address the issue of causation. *See* Dkt. No. 63 at 2 (stating that "the R&R does not affirmatively reflect that even if Seawright's alleged safety-based opposition to renovation of the paint booth at DJJ were protected citizen speech, not employee speech, her First Amendment claim would still fail because of the absence of evidence that this speech caused her termination."). Thus, it presumes proper application of the relevant procedural standards as explained above and is not an admission that Plaintiff was "terminated."

[7] *See* Dkt. No. 1 ¶9 (stating Seawright "brought matters of financial irresponsibility, *safety* and policy violations to the attention of the defendants") (emphasis added); *id.* ¶11 (stating Defendants Barber and Grant retaliated against her "to silence her reports of financial mismanagement, policy and *safety* policies") (emphasis added); *id.* ¶12 (stating Seawright's speech "involved matters of public concern, including but not limited to misuse of public monies, *safety* and policy violations") (emphasis added).

[8] *See* Dkt. No. 44 at 3 ("The plaintiff also brought matters of *safety* and policy violations to the attention of the defendants who ignored or scolded her, particularly the defendant Grant who treated her abusively and constantly harassed and demeaned her, often in the presence of others.") (emphasis added).

purchase in this document. For example, she states that, in a meeting with Grant and others "about the purchase and use of a 'car' paint booth, Plaintiff stated her reservations about the use of the item" including by noting the harmful ingredients in the materials which would be used and the fact that the juveniles who would use the booth had "committed crimes that warranted their intense security[,] . . . were "predisposed to making bad choices" and that, consequently, use of the booth would be "dangerous both for the children and for any teacher and any correctional officer[.]" *Id.* at 12; *see also id.* at 27 (referring to the meeting relating to "purchase and use of a paint booth" in which Plaintiff "stated her reservations about the use of the item in terms of *safety*") (emphasis added); *id.* (characterizing these statements as "assert[ing] her 1st amendment rights that this was dangerous both for the children and for any teacher. This was not in Plaintiff's realm of duties as outlined on her job description nor was it in any way [part] of her normal interaction with agency programs.").

In later-filed documents, Plaintiff has, similarly, stated that "the funding of a paint booth (not a renovation) is a part of Plaintiff's claim [for] suppression of 1st amendment and civil rights[.]" Dkt. No. 53 at 4 (also indicating cost of the booth was over $50,000). Similarly, in her deposition, excerpts of which Defendants submitted in support of summary judgment as well as with their objection, Seawright indicated that the meeting in which the paint booth was discussed was one which she requested. Dkt. No. 63-1 at 5 (Seawright dep. at 189). She also testified that the concerns she expressed in this meeting related both to the safety of instructors and the students who might use the paint booth. *Id.* at 2-9 (Seawright dep. at 186-93).

For purposes of this order, the court accepts as true Seawright's assertion that, to the extent she objected to the purchase of the autobody paint booth on safety-related grounds, her objections focused on areas beyond her areas of responsibility as DJJ's chief financial officer. The comments

were, however, made in the context of opposing the purchase of a relatively expensive item which would also have implicated her role as chief financial officer. Indeed, some of her current comments suggest that her concerns included whether this was an appropriate use of funds. *Id.* at 3 (Seawright dep. at 187 referring to purchase as a "[f]ifty thousand dollar pet project"). Even assuming Seawright only voiced objections to the paint booth on safety grounds, her position within the agency would have made it difficult for her superiors to completely divorce her role as chief financial officer from any opposition she may have voiced to this large purchase.[9]

Under these circumstances, it could not have been clear that Seawright's opposition to the purchase on safety-related grounds was speech as a private citizen on a matter of public concern, rather than speech on a matter within her role as chief financial officer. It follows that it was not clearly established that the speech fell within the realm of protected speech and, consequently, qualified immunity applies. *See generally Campbell v. Galloway*, 483 F.3d 258 (4th Cir. 2007) (finding that employee's complaint of gender discrimination, which went beyond her personal concerns, touched on matters of public concern but that her employer was entitled to qualified immunity from claims of alleged retaliation for that complaint because the Fourth Circuit's "fact-specific resolution of individual cases ha[d] done little to sharpen the line between cases where the complaints about discrimination are matters of public concern and those where such complaints are not matters of public concern").

_____

[9] In her deposition, Seawright asserted that she requested the meeting which was attended by at least four other DJJ employees, two of whom are Defendants in this action. The very fact that these four individuals attended a meeting requested by Seawright suggests that the attendees perceived a connection between Seawright's duties as chief financial officer and the subject matter of the meeting, purchase of a relatively expensive item. That the specific concerns Seawright voiced in the meeting may have focused on or been limited to safety does not defeat this perception given the natural linkage between safety, liability, and fiscal matters.

**Conclusion as to Qualified Immunity.** In light of Seawright's specific objection to the recommendation that some of her claims be dismissed on qualified immunity grounds, the court has conducted a *de novo* review of the Report as to this recommendation. Having done so and having found no error, the court adopts the Report's rationale and recommendation as to this issue, as supplemented above, and dismisses Seawright's first cause of action in full.

## II.    Summary Judgment to the Extent Claims Relate to Opposition to Paint Booth

Even were the court to find the claim asserted against the Individual Defendants in their individual capacity was not barred by qualified immunity, it would be constrained to grant Defendants' motion for summary judgment as to this claim (and related aspects of the claim asserted against Byars in his official capacity) for want of evidence of a causative connection. *See, e.g.,* Dkt. No. 31-1 at 19-21 (addressing absence of evidence of a causative link between the alleged comments and Seawright's termination which occurred a year later). As noted in Defendants' objection, Seawright has failed to direct the court to evidence of any causative link between her opposition to the paint booth and her alleged termination. Dkt. No. 63 at 3-5 (Defendants' objection addressing absence of evidence of causation).

At most, there is the weakest of temporal links between Plaintiff's speech and her alleged termination in that her opposition to the paint booth occurred prior to the alleged termination. Plaintiff has, however, failed to demonstrate a sufficiently close temporal link to give rise to an inference that the speech was causative of the alleged termination. Here, it is notable that Defendants have characterized the period between the two events as being as much as a full year. Dkt. No. 63 at 4 (Defendants' objection stating Seawright's "opposition to the paint booth was expressed about a year before her separation" and noting that such a weak temporal link is not enough to establish causation). Despite filing a subsequent "Addition," Seawright has not challengd

this characterization. *See* Dkt. No. 64 at 13 (Seawright's "Addition" characterizing Defendants' objection as an admission that Seawright "was terminated to silence her reports of financial mismanagement and violations of safety policies" but not responding to Defendants' argument as to the lack of evidence of causation). While the evidence does not establish that the relevant speech, in fact, occurred more than a year before termination, neither does it support a finding of any closer link in time.[10]

Therefore, to the extent Seawright's federal claims relate to her opposition to purchase of the paint booth, the court grants Defendants' motion for summary judgment for lack of evidence of a causative link between her speech and her alleged termination. This ruling applies to both federal claims, including the claim against Byars in his official capacity, regardless of the form of the relief sought.[11]

_____

[10] In her deposition, Seawright stated that the meeting at issue occurred "well over a year ago." Dkt. No. 63-1 at 4 (Seawright dep. at 188); Dkt. No. 31-3 at 97 (corresponding page attached to Defendants' motion to dismiss or for summary judgment). The deposition was, however, taken on February 8, 2010, allowing for the possiblity that the meeting occurred less than a year before Seawright's employment ended on April 6, 2009. Dkt. 31-3 at 2. Seeking to clarify the date of the meeting, defense counsel asked whether Seawright meant that the meeting took place in the "Spring of '08." Seawright responded that she would need her calendar to confirm the date but did not offer any other clarification. Dkt. No. 31-3 at 98-99 (Seawright dep. at 189-90). Later, when asked why she believed there was any connection between her opposition to the paint booth and her alleged termination, Seawright stated: "Because they put all of those together, all of these things and they are trying to portray me as a troublemaker. They're stirring it up, stirring staff up and trying to portray me as a troublemaker so I can't say anything." *Id.* at 102-03 (Seawright dep. at 193-94). After addressing her history of excellent audits, she added: "But just recently all of this has rolled up in a ball." *Id.* at 103. These comments amount to mere speculation on Seawright's part as to possible motivations for her alleged termination. She has not, even now, clarified when the relevant meeting (and allegedly protected speech) occurred.

[11] The ruling is an alternative ruling to dismissal on qualified immunity grounds as to the claim asserted against the Individual Defendants in their individual capacities. It is also an alternative ruling to dismissal on Eleventh Amendment grounds as to the relevant aspects of the official-capacity claim against Byars (to the extent Seawright seeks damages for alleged termination for her safety-related speech). To the extent Seawright seeks prospective equitable relief against Byars in his official capacity, this ruling constitutes the sole ground for relief and disposes of

## III.    Eleventh Amendment Immunity

Seawright's only references to the recommendation that the court dismiss her claim against DJJ and part of her official capacity claim against Byars based on Eleventh Amendment immunity are found in two statements asking that her claims be reinstated.  *See* Dkt. No. 62 at 9 ("Plaintiff requests that the first and third cause of action be reinstated because defendants, under the direct supervision of Judge Byars, cannot be immune from suit because Byars should have knowledge of protected and unprotected speech."); *id.* at 10 ("Plaintiff requests [her] first, second, and third cause of action be reinstated along with all requests for reinstatement to her prior position, back pay, front pay, compensatory damages and punitive damages and injunctive relief to prohibit defendants and others from violating her rights in the future.  Plaintiff also requests that Defendants Grant, Barber and Byars in their individual capacities and official capacities continue as named defendants in this suit as well as the South Carolina Department of Juvenile Justice.").[12]

Neither these statements nor anything else in Seawright's objection directly addresses the issue of Eleventh Amendment immunity.  The court has, therefore, reviewed the Report for clear error as to the recommendation that the court find the claims against DJJ and some aspects of the official-capacity claim against Byars precluded by the Eleventh Amendment.  Finding none, the court adopts the rationale and reasoning of the Report as to this recommendation.[13]

---

Seawright's claims to the extent based on her alleged safety-related comments.

[12]  The first of these statements appears to assume that the first and third causes of action assert claims under Section 1983 for First Amendment violations.  In fact, the third cause of action is asserted against DJJ and seeks recovery for termination in violation of public policy.  Collectively, however, these statements suggest that Seawright is objecting to the recommended dismissal of DJJ and Byars, to the extent sued in his official capacity for damages, based on Eleventh Amendment immunity.

[13]  The court would reach the same conclusion under a *de novo* standard of review.

#### IV. Seawright's Other Arguments

In her objection, Seawright includes a few references to comments or actions which may suggest that she or others were subjected to discrimination on the basis of age, gender, or race. Dkt. No. 62 at 6. She has not, however, asserted any such claims in this action. Moreover, any such claims are now barred for reasons addressed in Defendants' "Response to Plaintiff's motion to dismiss Defendants' motion to dismiss or for summary judgment." *See* Dkt. No. 51 at 8-11. Therefore, to the extent Seawright may intend these comments as an objection to the Report's implicit recommendation that this court deny her belated request to amend her complaint, the court finds her objection to be without merit. *See* Dkt. No. 44 at 31 (stating, in conclusion of memorandum, that she wishes to add claims for age discrimination and sexual harassment).[14]

#### V. Defendants' Objection

Through their objection, Defendants ask the court to address Seawright's claims relating to her opposition to purchase of the paint booth with more specificity, including as it relates to the absence of evidence of causation. The court has done so as set forth above.

Defendants, in particular Defendant Byars in his official capacity, object to the recommendation that Byars be required to participate in mediation before the court addresses the remaining aspects of Defendants' motion for summary judgment. Although the undersigned strongly encourages mediation and includes a mediation deadline in every scheduling order, relief from this deadline (and often the mediation requirement itself) is freely granted. In this case, the court agrees that the remaining aspects of Defendants' summary judgment motion (specifically as it relates to the claim against Byars in his official capacity) should be addressed before mediation.

---

[14] Such a request, contained within another memorandum, is not, in any event, sufficient to constitute a proper motion to amend.

This matter is, therefore, remanded to the Magistrate Judge for Report and Recommendation on the remaining issue(s) addressed by Defendant Byars' summary judgment motion.

The court reserves ruling on whether mediation will be required in the event summary judgment is denied. However, the court notes that if mediation is required, Seawright would be required to pay one-half of the anticipated cost in advance of the mediation.

## VI. Plaintiff's "Motion for Summary Judgment in Plaintiff's Favor if Defendants Refuse to Follow Court Orders"

In her post-objection motion for summary judgment (filed October 15, 2010), Seawright suggests, incorrectly, that Defendants have now admitted that she was terminated. *See generally supra* n.6. She does not, however, suggest how this entitles her to any relief. In any event, for reasons addressed above, most of her claims are dismissed even with the presumption that her employment ended as a result of termination. *Id.*

Plaintiff also suggests that Defendants are improperly opposing or delaying mediation. The court disagrees for reasons set forth above.

Plaintiff's motion suggests no other basis for relief. Her motion for summary judgment is, therefore, denied.

## CONCLUSION

For the reasons set forth above, the court adopts the reasoning and recommendations of the Report as supplemented above and grants Defendants' motion to dismiss or for summary judgment (Dkt. No. 31), in part, dismissing Seawright's first and third causes of action and limiting her second cause of action to pursuit of prospective relief based on her alleged speech on fiscal matters.[15]

---

[15] The determination that the Eleventh Amendment bars pursuit of the state law claim against DJJ in this court is based solely on application of federal law. The court expresses no opinion as to whether this or any other claim might be pursued against DJJ in a state forum.

Seawright's cross-motions for summary judgment (Dkt. Nos. 40 and 65) and to dismiss Defendants' motion (Dkt. No. 44) are denied, including any request to amend her complaint. The matter is remanded to the Magistrate Judge to address the remaining aspects of Byars' summary judgment motion. Any requirement for mediation is deferred until after resolution of this motion.

**IT IS SO ORDERED.**

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
October 25, 2010